THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THADDEUS JIMENEZ, Defendant-Appellant.

First District (5th Division)   No. 1—94—4358

Opinion filed November 1, 1996.—Rehearing denied December 3, 1996.

Thomas Peters, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Defendant, Thaddeus Jimenez, appeals from his conviction and sentence on the charge of first degree murder. We reverse and remand for a new trial because the trial court refused to ask prospective jurors any question concerning the effect defendant's gang affiliation might have on their ability to give him a fair trial.

Around 6 p.m. on February 3, 1993, Larry Tueffel and Eric Morro encountered Victor Romo and another boy on a city sidewalk. Several witnesses on the street saw the boy with Romo kill Morro by shooting him point-blank in the chest. One of the witnesses called police about six hours later and named defendant as the shooter. Based on the telephone call, police arrested defendant before dawn on February 4, 1993. Three witnesses viewed a lineup at the police station. Two identified defendant as the shooter; the third witness said both defendant and another person in the lineup looked like the shooter.

Prior to trial defendant moved to preclude reference to gang affiliation. The court denied the motion, finding that the prosecution had sufficient evidence that gang affiliation provided the motive for the murder. Defendant then sought to have the court ask each member of the venire, on *voir dire*:

"Would the fact that an accused is allegedly a member of a street gang, prevent you from giving him a fair and impartial trial?"

Defendant also requested two other questions, one relating to handguns and the other relating to publicity concerning gang-related murders. The court said, "[W]e are just going to be here for days going into these things." The court refused all three questions, and it asked the venire no questions remotely suggesting that gang evidence would be part of the case.

At trial Shawn Cosmen testified that around 3:30 p.m. on February 3, 1993, he and Morro saw defendant yelling towards a school bus and making hand signs indicating his affiliation with the Royals gang. Morro told defendant to "take his gang banging stuff somewhere else" because kids were nearby. Defendant answered: "You'll get your ass beat. *** You'll get yours."

Tueffel testified that when he and Morro encountered defendant and Romo around 6 p.m. that day, Romo accused Morro of owing Leo some money. Morro said it was none of Romo's business. Romo and defendant walked a few steps away, then returned. Romo pushed Morro against a wall. Morro swung his fist, then defendant shot Morro. After shooting Morro, defendant threw up the hand sign for the Royals gang.

Tueffel admitted that the first time he spoke with police he said Frankie, not defendant, shot Morro. He also gave a description that did not fit defendant. Tueffel explained that he was also a member of the Royals, and he feared retaliation if he identified defendant.

The officer who took Tueffel's initial description of the shooter testified that the description was vague and Tueffel acted evasively, changing some parts of the description as he spoke. The prosecutor asked for the officer's opinion "as to the truthfulness" of Tueffel's initial description of the shooter. The court allowed the officer to answer, over defendant's objection, that he did not believe Tueffel had told him the truth about what he saw.

Defendant's sister, Angela Jimenez, and three friends of his family testified that they saw defendant at a family party from 4:30 p.m. until 11 p.m. on February 3, 1993.

Victor Romo testified that he and Carlos Torres met Morro and Tueffel around 6 p.m. on February 3. Torres argued with Morro about money. When Morro started to swing at Torres, Romo ran away.

Romo heard the gunshot seconds later. He admitted that he had been found delinquent due to his role in the murder.

Defendant sought to present Ezequiel Romo to testify to a conversation he had with Torres. The trial court disallowed the evidence as hearsay. Defendant said in an offer of proof that Ezequiel Romo would testify that he spoke with Torres on February 10, 1993, and Torres admitted that he shot and killed Morro.

The court also granted the prosecutor's request to bar the testimony of Joe Paupau. Defense counsel said that Paupau would testify that he and a leader of the Royals, Taeksu Chi, attended a party at defendant's home in January 1993. Paupau and Taeksu got into a fight and Paupau knocked out some of Taeksu's teeth. Defense counsel suggested that Taeksu wanted to get back at defendant because the fight occurred in defendant's home. The trial court found the theory too far-fetched.

The jury found defendant guilty of first degree murder. After hearing substantial evidence of prior criminal acts in aggravation, the trial court sentenced defendant to a term of 50 years in the Department of Corrections.

■ Defendant argues on appeal that the trial court committed reversible error by refusing to ask prospective jurors whether defendant's gang affiliation would prevent them from giving defendant a fair trial. The trial court has discretion to determine the scope and extent of *voir dire. People v. Lobb*, 17 Ill. 2d 287, 300, 161 N.E.2d 325 (1959).

> "However, a failure to permit pertinent inquiries to enable a party to ascertain whether the minds of the jurors are free from bias or prejudice which would constitute a basis of challenge for cause, or which would enable him to exercise his right of peremptory challenge intelligently, may constitute reversible error." *Lobb*, 17 Ill. 2d at 300.

The trial court "must exercise *** discretion so as not to block the reasonable exploration of germane factors that might expose a basis for challenge, whether for cause or peremptory." *People v. Oliver*, 265 Ill. App. 3d 543, 548, 637 N.E.2d 1173 (1994). "[T]he standard for evaluating a court's exercise of discretion during *voir dire* is whether the questions posed and the procedures employed created a reasonable assurance that prejudice would be discovered if present." *People v. Lanter*, 230 Ill. App. 3d 72, 75, 595 N.E.2d 210 (1992).

In *Oliver* the trial court asked the venire collectively if any members had been victims of any of a list of crimes. *Oliver*, 265 Ill. App. 3d at 549. The court then asked collectively whether the experiences would prevent the venire members from remaining impartial.

Most jurors did not respond. Defendant objected that he needed to know which crimes affected each member of the venire, and he needed to watch individual responses concerning prejudice. This court held that the "unduly restrictive [questioning] made it impossible to determine whether defendant received a fair and impartial jury. *** The conduct of jury selection proceedings in this case did not ensure that defendant would be afforded his constitutional right to a trial before an impartial jury." *Oliver*, 265 Ill. App. 3d at 551.

The parties cite for us no case in which the court addresses the issue of whether a defendant who belongs to a gang has a right to have the venire questioned as to biases against gang members. This appears to be a case of first impression in Illinois courts of appeal. In most Illinois cases, we have found the trial court permitted questioning of the venire concerning gang evidence. See *People v. Moreno*, 238 Ill. App. 3d 626, 637-38, 606 N.E.2d 514 (1992); *People v. Gardner*, 282 Ill. App. 3d 209, 218, 668 N.E.2d 125 (1996); *People v. Bunch*, 159 Ill. App. 3d 494, 505, 512 N.E.2d 748 (1987); *United States v. McAnderson*, 914 F.2d 934, 943 (7th Cir. 1990). In one case the trial court disallowed the question, but the defendant did not raise the issue on appeal. *People v. Porter*, 111 Ill. 2d 386, 401-02, 489 N.E.2d 1329 (1986).

Gang membership is an area of potential bias, as "there is widespread prejudice against street gangs." *People v. Martin*, 271 Ill. App. 3d 346, 355, 648 N.E.2d 992 (1995). The court here refused to ask the venire any questions that could probe for this bias. Because of the complete lack of questioning on this issue, defendant could not exercise his peremptory challenges intelligently. See *Lobb*, 17 Ill. 2d at 300. The procedures employed here would not reveal prejudice against gang members. See *Lanter*, 230 Ill. App. 3d at 75. Indeed, the trial court effectively conceded that its procedure would allow onto the jury persons predisposed to find defendant guilty solely because he was a gang member, as the court refused to ask about bias against gangs in part because, with that question, the court would spend much more time impanelling an impartial jury.

■ We hold that even a gang member has a constitutional right to have his case determined on the basis of the evidence of his guilt or innocence, by a jury that is not predisposed to find him guilty solely because of his gang membership. Ill. Const. 1970, art. I, § 8. Once the court decided to permit the prosecution to present evidence of defendant's gang affiliation, by denying defendant's motion *in limine*, "the trial judge was under a clear duty to insure during *voir dire* that the jury selected [was] free from prejudice against the group." *People v. Beyea*, 38 Cal. App. 3d 176, 195, 113 Cal. Rptr. 254, 266

(1974). Defendant need not prove that the jury impanelled actually harbored prejudice against him. *Lanter*, 230 Ill. App. 3d at 75. Because of the improper refusal of an appropriate question, which would have tested an area of potential bias not covered by other questions, the conviction must be reversed. *Lanter*, 230 Ill. App. 3d at 76.

The identification of defendant as the shooter by eyewitnesses sufficiently sustains a verdict finding him guilty beyond a reasonable doubt. *People v. Slim*, 127 Ill. 2d 302, 307-08, 537 N.E.2d 317 (1989). The trier of fact must weigh the credibility of alibi testimony against the credibility of identification testimony. *Slim*, 127 Ill. 2d at 315. Therefore, we remand the cause for a new trial. See *People v. Massie*, 137 Ill. App. 3d 723, 732, 484 N.E.2d 1213 (1985).

■ Three further issues will probably arise again on retrial. Defendant argues that the officer who took Tueffel's initial description of the offender should not have been permitted to testify that he believed Tueffel lied when he gave the description. In *People v. Sparkman*, 68 Ill. App. 3d 865, 870, 386 N.E.2d 346 (1979), an officer who took a witness' statement testified that he did not report the statement because the witness' conflicting stories made her statement unbelievable. The appellate court held that the officer improperly expressed his opinion on credibility, but because the opinion was obvious, it did not prejudice the defendant. *Sparkman*, 68 Ill. App. 3d at 871. Following *Sparkman*, we hold that the officer here cannot properly express an opinion concerning the credibility of Tueffel's initial description of the offender. On retrial the court should bar the prosecution's question and the officer's opinion.

■ Defendant now, on appeal, claims that Joe Paupau would have testified that defendant knocked out gang leader Taeksu's teeth and, in retaliation, Taeksu ordered Tueffel to falsely implicate defendant. The record shows that at trial defendant relied on the very different representation that Paupau would testify that Paupau, not defendant, knocked out Taeksu's teeth, and Taeksu sought revenge against defendant only because the fight occurred at a party in defendant's home. On retrial the court will need to assess the relevance and materiality of the testimony Paupau will actually present, once defendant determines what that testimony will be.

Finally, defendant seeks to present Ezequiel Romo's testimony concerning Torres' confession that he, not defendant, shot Morro. Defendant argues first that, as a matter of fundamental fairness, the court should permit him to present another person's confession in support of defendant's theory of the case in at least all circumstances in which it would permit the prosecution to present defendant's

confession in support of the prosecution's theory of the case. See *People v. Gonzalez*, 104 Ill. 2d 332, 338, 472 N.E.2d 417 (1984). Our supreme court has established standards for determining the admissibility of alleged confessions a defendant seeks to introduce, and those standards do not coincide with standards for admissibility of the defendant's confessions. See *People v. Byrd*, 21 Ill. 2d 114, 116, 171 N.E.2d 782 (1961); *People v. Hawkins*, 53 Ill. 2d 181, 185, 290 N.E.2d 231 (1972); *People v. Bowel*, 111 Ill. 2d 58, 66-67, 488 N.E.2d 995 (1986). We find that the argument from fundamental fairness, which would require some change in those standards, must be decided by our supreme court.

■ A declarant's confession that he, not defendant, committed the crime is admissible as a statement against penal interest if circumstances give the statement sufficient indicia of trustworthiness. *Bowel*, 111 Ill. 2d at 66. Some factors the court may consider include corroborative evidence, the extent of self-incrimination, the spontaneity of the confession and whether the person who heard the confession was such a close acquaintance that the declarant might reasonably be expected to confess to him. *Bowel*, 111 Ill. 2d at 67. These factors are only some possible considerations that may provide guidance in determining trustworthiness of a confession. *Bowel*, 111 Ill. 2d at 68. Even when these factors show some trustworthiness, the confession may be inadmissible if the confessor is not available for cross-examination either at trial or in prior hearings. *Bowel*, 111 Ill. 2d at 68; *People v. Hampton*, 249 Ill. App. 3d 329, 337, 618 N.E.2d 923 (1993). The defendant is responsible for making the alleged declarant available for cross-examination. *People v. Murray*, 201 Ill. App. 3d 573, 579, 559 N.E.2d 174 (1990).

■ Victor Romo's testimony that Torres shot Morro provides the most substantial corroboration for the confession. The record shows that defendant subpoenaed Torres, but whether he appeared so that he could be cross-examined is less clear. However, defendant's offer of proof provided no details of the confession, except that Torres admitted the shooting. This confession may not incriminate Torres, if he also reported details that make the shooting constitute self-defense. The lack of detail concerning, for example, Torres' appearance, makes impossible the determination of the extent to which the alleged confession corroborates the testimony of the other eyewitnesses. Defendant in the offer of proof also gave no indication of the nature of the relationship between Torres and Ezequiel Romo, and Romo's unspecified questions may deprive the confession of spontaneity. See *Hampton*, 249 Ill. App. 3d at 337. We find the offer of proof inadequate for a determination of the trustworthiness of the confes-

sion. On remand, defendant may present in full the circumstances surrounding Torres' statements for an evaluation of their trustworthiness.

Because the trial court refused to ask the venire any question from which the defendant could determine whether jurors would be able to weigh impartially the evidence against an admitted gang member, the judgment of the trial court is reversed and this cause is remanded for a new trial.

Reversed and remanded.

GORDON and HOURIHANE, JJ., concur.