THIRD DIVISION

May 15, 2002

No. 1-01-1003

THE PEOPLE OF THE STATE OF ILLINOIS, )   Appeal from the

)   Circuit Court of

Plaintiff-Appellee, )   Cook County. )

v. )                   

) 

CLARENCE GARDNER, )   Honorable 

)   Dennis J. Porter, Defendant-Appellant. )   Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

In 1995, Clarence Gardner was convicted of first degree murder and sentenced to 35 years in prison.  We affirmed his conviction and sentence on direct appeal in 1996.  
People v. Gardner
, 282 Ill. App. 3d 209, 668 N.E.2d 125 (1996).  In December 2000, Gardner filed a post-conviction petition, which the trial court denied as untimely.  The trial court also found his petition frivolous and without merit.  Gardner appeals the trial court's summary dismissal, contending: (1) the delay in filing the petition was not due to his culpable negligence; and (2) under 
People v. Strain
, 194 Ill. 2d 467, 742 N.E.2d 315 (2000), he was denied his right to a fair trial by the trial court's refusal to ask questions concerning gang bias during 
voir
 
dire
.  We reverse and remand for further proceedings. 

FACTS

     Gardner was convicted under a theory of accountability for the shooting death of Joseph Waites, Jr.  The murder was the result of gang rivalry and much of the evidence at trial focused on Gardner's affiliation with the Gangster Disciples street gang.  The facts of the murder are set out in our opinion on direct appeal.  See 
Gardner
, 282 Ill. App. 3d at 211-13.

     During a pretrial conference, defendant sought to have the trial court ask the following questions during 
voir
 
dire
:

     "1.  Have you ever known anyone who was in a gang? (
If answer is yes, ask follow up questions
.)

a.  Do you think that someone who is in a gang is necessarily a criminal?

b.  Do you understand that it is not a crime just to join a gang?

c.  Do you understand that one member of a gang is not legally responsible for the actions of other gang members just because they are in the same gang?

d.  Would you be able to put aside any feelings you may have about gangs, and give the defendant a fair trial based on the evidence?"  (Emphasis added.)

     At the hearing, the trial court discussed the questions with defense counsel:

     "THE COURT: *** Now, do you want me to ask a question of the jury – - well, I'll ask if you have a question of the jury which you want asked, I will ask it.  I could ask a question something on the order of you - - do you have any connection with gangs or with - - if there were any evidence of gang membership would that influence your outcome or your verdict one way or the other.

     [DEFENSE COUNSEL]: We would like you to ask something.  And in fact, given that we didn't know until today that we were going to be before you and didn't know how you did voir dire, we had prepared certain questions we were going to tender to the court which include questions of that character.  They include other questions, as well.

     THE COURT: All right.  On the proposed questions, I will ask this question.  'Have you or any member of your immediate family ever had any direct involvement with a street gang.'  I'm not going to ask questions A, B, C, and D.  All right.  I'll follow up on that question.  And if they answer yes, I'll see what it is."

     During 
voir
 
dire
, the trial court first asked, "Have you or any member of your immediate family had any direct involvement with a street gang?"  No prospective juror said he or she had any direct involvement with a gang.  Next, the court asked, "Have you or any member of your family had any indirect involvement with a street gang?"  One juror answered "yes."  

     The following exchange took place between the trial court and the juror who answered he had had indirect involvement with a street gang:

     "Q: You said you had some indirect involvement with street gangs or [sic] member of your immediate family?

A: I grew up in *** Pilsen street area, also Little Village area. *** I have five brothers.  Indirectly we were involved with one gang or another indirectly during our youth.

Q: Is there anything about that that would prevent you from giving both sides a fair trial?

A: No, sir."

     This juror eventually was excused for cause on the State's motion.  The motion was based on the juror's answer to a different question.  The court did not ask any other questions concerning gang bias.  

PROCEDURAL FACTS

     After he was convicted and sentenced, defendant raised several issues on direct appeal.  One of the issues raised was the same one he raises here: the trial court erred in failing to ask more questions surrounding gang bias during 
voir
 
dire
.  On direct appeal we affirmed the trial court and found no error.  We found, without extended discussion, the trial court's questions were sufficient to address the possibility of juror bias. 

     Defendant filed a petition for leave to appeal to the supreme court.  The supreme court denied defendant's petition on October 2, 1996.  
People v. Gardner
, 168 Ill. 2d 606, 671 N.E.2d 736 (1996).

     Defendant next filed a petition for writ of 
habeas
 
corpus
 in the Northern District Court of Illinois.  Defendant again raised the 
voir
 
dire
 issue.  The District Court denied defendant's petition.  A Seventh Circuit panel reversed the lower court's decision, finding, in part, that the trial court erred in limiting 
voir
 
dire
.  
Gardner v. Barnett
, 175 F.3d 580 (1999).  On petition for rehearing 
en
 
banc
, the Seventh Circuit vacated its opinion and affirmed the lower court's denial of defendant's 
habeas
 
corpus
 petition.  
Gardner v. Barnett
, 199 F.3d 915 (7th Cir. 1999).

     Defendant filed a petition for post-conviction relief in December 2001, six weeks after the Illinois Supreme Court decided 
People v. Strain
, 194 Ill. 2d 467, 742 N.E.2d 315 (2000) -- where gang-related testimony is "pervasive," the failure to ask questions surrounding gang bias during 
voir
 
dire
 amounts to reversible error.  

Defendant recognized his petition was untimely, but said:

     "[Defendant] has not been culpably negligent in pursuing his rights.  Rather, [defendant] timely presented his contention on direct appeal. [Defendant] brings this petition now because last month, in another matter, the Illinois Supreme Court clarified that [defendant] has been correct all along in his contention that his Illinois constitutional rights were violated by the trial court's refusal to permit 
voir
 
dire
 concerning street gang bias.  [Citing 
People v. Strain
 in a footnote.]  It is on the basis of that clarification that [defendant] seeks this post-conviction relief. [Defendant] could not have sought this post-conviction relief any earlier because the Supreme Court's clarification had not issued; he brings this petition approximately six weeks after the clarification."

     The trial court summarily dismissed defendant's petition, finding it untimely.  The court found defendant could not "escape the fact that he was culpably negligent in filing the *** petition beyond the prescribed time period" because the 
Strain
 court did not indicate its holding applied retroactively.  It also found the 
Strain
 issue
 barred by 
res
 
judicata
 because it was decided on direct appeal. 

DECISION

TIMELINESS OF PETITION

     Defendant contends the trial court erred in finding his petition untimely.  Because he raised the 
voir
 
dire
 issue on direct appeal, defendant claims he would have been barred from raising the issue in a post-conviction petition before 
Strain
 was decided by the supreme court.  

     The Post-Conviction Hearing Act (Act)(725 ILCS 5/122-1 
et
 
seq
. (West 1998)) provides a three-stage process for adjudication of post-conviction petitions.  
People v. Frieberg
, 305 Ill. App. 3d 840, 846, 713 N.E.2d 210 (1999).  During the first stage the trial court determines, without any input from the State or further pleadings from the defendant, whether the petition is frivolous or patently without merit.  
Frieberg
, 305 Ill. App. 3d at 847.  At this first stage, the trial court must accept as true all facts pleaded in the petition, unless the trial record positively rebuts these pleadings.  
People v. Coleman
, 183 Ill. 2d 366, 385, 701 N.E.2d 1063 (1998).  

We review the summary dismissal of a post-conviction petition 
de
 
novo
.  
People v. Simms
, 192 Ill. 2d 348, 360, 736 N.E.2d 1092 (2000).  

     Section 122-1(c) of the Act sets out a time limitation for post-conviction relief.  This section states, in pertinent part:

     "(c) No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court *** or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence."  725 ILCS 5/122-1(c)(West 1998).

     Here, defendant was sentenced on March 24, 1995.  His petition for leave to appeal was denied by the supreme court on October 2, 1996.  The deadline for filing a timely post-conviction petition under the Act would have been six months later, April 2, 1996.  Defendant's petition was tardy by more than five years.

     However, defendant raises an interesting question: given the change in the law represented by the 
Strain
 decision, can his tardiness be excused?  

     In the only supreme court case in which this issue was raised, 
People v. Jones
, 191 Ill. 2d 194, 730 N.E.2d 26 (2000), the defendant's second, untimely post-conviction petition alleged he was denied due process by the trial court's failure to conduct a fitness hearing after it became aware the defendant was taking psychotropic medication.  The trial court summarily dismissed the defendant's petition as untimely.  

On appeal, the defendant argued his late filing should be excused because the claims raised in the second petition were predicated on the supreme court's decision in a case filed just two months before defendant filed his late petition.  The supreme court found it was not necessary to address this issue because the petition was procedurally barred by the rules governing successive petitions.  
Jones
, 191 Ill. 2d at 199.

     In 
People v. Hernandez
, 296 Ill. App. 3d 349, 694 N.E.2d 1082 (1998), the defendant filed a post-conviction petition more than four years after he was sentenced.  The State filed a motion to strike the petition, arguing it was untimely.  The trial court conducted a hearing, and ruled the defendant's failure to file a timely petition was not due to his culpable negligence because of the "evolving nature" of the law on the issue he raised (whether a tax conditioned on commission of a crime violates the ban on double jeopardy).  The appellate court affirmed:

     "As petitioner points out, our supreme court did not issue an opinion addressing this issue until February 1996 *** From these facts, we cannot say that the trial court manifestly erred in finding that petitioner had shown that the delay in filing the petition was not due to his culpable negligence."  
Hernandez
, 296 Ill. App. 3d at 352.

     In 
Hernandez
, the trial court's ruling was reviewed using a "manifest error" standard because the petition had reached the second stage of post-conviction proceedings and a hearing was held.  Here, we review the trial court's summary dismissal of the petition 
de
 
novo
.  
Simms
, 192 Ill. 2d at 360. 

     
Showing a lack of "culpable negligence" has been notoriously difficult for defendants.  See 
People v. Scullark
, 325 Ill. App. 3d 876, 883, 759 N.E.2d 565 (2001) (lack of culpable negligence standard difficult to overcome).  In 
Scullark
, the defendant claimed his tardy filing was not due to his culpable negligence because he was placed in segregation in prison and had no access to legal materials during the period leading up to the filing deadline.  This court defined "culpable negligence" for the first time in 
Scullark
:

     "*** [T]he Act does not merely refer to 'negligence' but to 'culpable negligence' and the word 'culpable' must be held to mean something. [Cite.] The dictionary defines 'culpable' as 'responsible for wrong or error; blameworthy.' [Cite.]

     Thus, we conclude that by defining the standard as a lack of 'culpable negligence,' the legislature intended to hold petitioners to a lower degree of care than mere negligence.  In other words, to be 'culpably negligent,' a petitioner would need to be more than merely negligent."  
Scullark
, 325 Ill. App. 3d at 884.

     The 
Scullark
 court concluded that "culpable negligence" was " 'more than the failure to use ordinary care' " or " 'negligence of a gross and flagrant character.' "  
Scullark
, 325 Ill. App. 3d at 885, quoting 
Holway v. Ames
, 60 A. 897, 898 (1905) and 
Ross v. Baker
, 632 So. 2d 224, 226 (1994).

     When applied to the facts of this case, the 
Scullark
 definition makes it difficult to find defendant's failure to file a timely petition was due to his "culpable negligence."  As defendant points out, he pursued the gang bias 
voir
 
dire
 issue on direct appeal, in a petition for leave to appeal the decision on direct appeal, and before the federal court in a 
habeas
 
corpus
 proceeding.  His argument was rejected in each of these venues.  Given that defendant raised the issue on direct appeal, defendant could not have argued it again in a post-conviction petition before the supreme court issued its decision in 
Strain
 because it would have been barred by 
res
 
judicata
.  See 
People v. Whitehead
, 169 Ill. 2d 355, 371, 662 N.E.2d 1304 (1996).  We do not see how defendant's failure to raise the issue yet again, in a post-conviction petition that would have been doomed to fail pre-
Strain
, constitutes "negligence of a gross and flagrant character."  We find the trial court erred in rejecting the petition as untimely.

In so deciding, we do not intend to extend our lack of culpable negligence finding beyond the facts of this case and the important right that is at stake -- the right of a defendant to "selection of an impartial panel of jurors, free from bias and prejudice."  
Strain
, 194 Ill. 2d at 481.

RETROACTIVITY OF 
STRAIN

Defendant also contends the trial court erred in finding his petition was frivolous and without merit.  The trial court's ruling was premised on its finding that 
Strain
 could not be retroactively applied.  The State agrees, contending 
Strain
 announced a new rule which cannot be retroactively applied in a post-conviction proceeding.  We disagree.

     Decisions which announce "new rules" are not generally applied retroactively to cases pending on collateral review.  
People v. Moore
, 177 Ill. 2d 421, 430, 686 N.E.2d 587 (1997).  "[A] case announces a 'new rule' when it breaks new ground or imposes a new obligation on the state or federal government."  
Moore
, 177 Ill. 2d at 430-31 (adopting the reasoning set out in 
Teague v. Lane
, 489 U.S. 288, 301, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989)).  If the result is not dictated by precedent existing at the time the defendant's conviction becomes final, the case announces a "new rule."  
Moore
, 177 Ill. 2d at 431.  However, where a case simply applies a well-established constitutional principle to govern a case which is closely analogous to those previously considered, it does not announce a "new rule" and it may apply to cases pending on collateral review.  
Moore
, 177 Ill. 2d at 431.

     In 
Strain
, the defendant appealed a first degree murder conviction, contending the trial court erred in refusing to ask the jury venire two questions he submitted concerning gang bias.  At Strain's trial, the court asked each prospective juror "whether the juror, any member of the juror's family or a close friend of the juror had ever been involved in a gang."  
Strain
, 194 Ill. 2d at 470.  The trial court would not allow defense counsel to ask whether the prospective jurors would find defendant less believable if they learned that defendant belonged to a gang or whether the prospective jurors would find defendant's membership in a gang made it more likely than not that defendant was guilty of a gang shooting.  
Strain
, 194 Ill. 2d at 471.    

     The supreme court reversed the defendant's conviction and remanded for a new trial, finding the trial court erred in refusing to ask the supplemental questions:

     "Throughout its opening statement and closing argument, the State reminded the jurors of the importance of gang testimony at trial.  The jury heard testimony from numerous police officers assigned to gang units, police detectives and gang members, all contending that a gang war was in effect between the Gangster Disciples and the Black Disciples; that Perry Avenue was the dividing line between the two gangs; and that defendant, intent on obtaining revenge against the Gangster Disciples, made forays into Perry Avenue in his capacity as a police informant, who gave information leading to the arrest of members of the Gangster Disciples, and as the shooter with the limp and the automatic weapon, who, eventually, shot Dow.  Given this list of witnesses, the importance of gang testimony at trial, and the prejudice which may attach to such testimony, the trial court should have questioned the prospective jurors to determine whether they harbored any gang bias or prejudice."  
Strain
, 194 Ill. 2d at 479.

     The supreme court premised its decision on Supreme Court Rule 431 (177 Ill. 2d R. 431), which outlines the procedure the trial court is to follow during 
voir
 
dire
, and on case law discussing the purpose of 
voir
 
dire
.  
Strain
, 194 Ill. 2d at 467 (purpose of 
voir
 
dire
 is to ascertain information regarding bias and prejudice).  The supreme court noted it had "recognized that street gangs are regarded with considerable disfavor by other segments of our society" in prior opinions.  
Strain
, 194 Ill. 2d at 477, citing 
People v. Gonzalez
, 142 Ill. 2d 481, 489, 568 N.E.2d 864 (1991).  It referred to supreme court cases and opinions issued by this court acknowledging "there may be strong prejudice against street gangs."  
Strain
, 194 Ill. 2d at 477, citing 
People v. Patterson
, 154 Ill. 2d 414, 458, 610 N.E.2d 16 (1992); 
People v. Smith
, 141 Ill. 2d 40, 58, 565 N.E.2d 900 (1990); 
People v. Pogue
, 312 Ill. App. 3d 719, 727, 724 N.E.2d 525 (1999); 
People v. Jimenez
, 284 Ill. App. 3d 908, 912, 672 N.E.2d 914 (1996); 
People v. Martin
, 271 Ill. App. 3d 346, 355, 648 N.E.2d 992 (1995). 

The court's conclusion that Strain was "denied an informed and intelligent basis on which to assert challenges for cause or to exercise peremptory challenges" was based on "constitutional safeguards" granted the accused by Article I, sections 8 and 13, of the Illinois Constitution (Ill. Const. 1970, art. I, §§8 and 13).  
Strain
, 194 Ill. 2d at 481.  

     Given the court's reliance on precedential case law and its reference to long-standing principles surrounding 
voir
 
dire
, we find the 
Strain
 court did not intend to announce a "new rule."  See 
Moore
, 177 Ill. 2d at 433 (decision merely applied existing precedent and statutory law to the facts of the case and did not announce a "new rule").  
Strain
 can be applied retroactively.

RES JUDICATA

The State contends 
res
 
judicata
 acts as a bar to defendant's post-conviction petition, even if 
Strain
 can be applied.  We do not agree.  An issue rejected on direct appeal may be raised again, without being barred by 
res
 
judicata
, where the law on that issue has changed.  
People v. Partee
, 268 Ill. App. 3d 857, 864, 645 N.E.2d 414 (1994)(defendant allowed to raise same 
Batson
 issue in his post-conviction petition where law on the issue had changed since the court ruled on direct appeal).  
Strain
 reflects the "evolving nature of the law."  
Hernandez
, 296 Ill. App. 3d at 352.

APPLICABILITY OF STRAIN

     This brings us to an analysis of the issues raised in defendant's post-conviction petition.  Defendant claims 
the trial court committed reversible error by refusing to ask jurors the supplemental gang bias questions he submitted to the court.  Defendant focuses specifically on the trial court's failure to ask question "d": "Would you be able to put aside any feelings you may have against street gangs, and give the defendant a fair trial based on the evidence?"

     An examination of the record suggests defendant's question "d" was to be asked only after a prospective juror answered "yes" to the first question defendant submitted:

"1.  Have you ever known anyone who was in a gang? (
If answer is yes, ask follow up questions
.)

* * *

d.  Would you be able to put aside any feelings you may have about gangs, and give the defendant a fair trial based on the evidence?"  (Emphasis added.)

     The trial court ultimately asked a broader question than the one submitted by defendant.  Rather than simply ask whether the prospective jurors had ever known anyone in a gang, the trial court asked whether the jurors or any members of their immediate families ever had any direct or indirect involvement with a street gang. 

     It is not clear from the record that the trial court erred in the same way as the 
Strain
 trial court.  The State insists the defendant ultimately got what he asked for, although the defendant contends the entire record shows he did ask the trial judge to pose the gang bias questions.

     The 
Strain
 decision tells trial courts that "when testimony regarding gang membership and gang-related activity is to be an integral part of the defendant's trial, the defendant must be afforded an opportunity to question the prospective jurors, either directly or through questions submitted of the trial court, concerning gang bias."  
Strain
, 194 Ill. 2d at 477.  Clearly, gang activity was an integral part of Gardner's trial.

As 
Strain
 teaches, in order to assert challenges for cause or to exercise peremptory challenges, the defendant was entitled to learn whether jurors possessed any bias against gangs.  But 
Strain
 was a case where the defense lawyer asked that the gang bias question be posed to prospective jurors.  We are not convinced the defense lawyer in this case asked the trial judge to pose that specific question without a precondition that was not met.  Nor is it clear defense counsel asked permission to put that question to the potential jurors.

On the other hand, it is clear the trial judge knew this was a gang rivalry case and he was alerted to the defendant's concern about gang bias among prospective jurors.  Whether the trial judge had some obligation to address the issue in the absence of a specific request is a matter we leave for another day.  At any rate, this is not a frivolous issue.  It should have survived a first-stage inquiry.  

We conclude justice would be best served by vacating the trial court's dismissal order and remanding this cause for a second-stage hearing, where counsel will be appointed to represent the defendant.  The issue will be whether 
People v. Strain
 provides any relief for the defendant.  We do not mean to indicate any preference in the matter.

CONCLUSION

For the reasons stated, we reverse the trial court's order dismissing the defendant's post-conviction petition and remand the cause to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

CERDA, and SOUTH, JJ., concur.