THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLARENCE GARDNER, Defendant-Appellant.

First District (2nd Division)    No. 1—03—1619

Opinion filed May 11, 2004.

Clark C. Johnson and Christina T. Tomaras, both of Jenner & Block, L.L.C., of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Clarence Gardner contends the trial court's failure to ask or to allow his defense counsel to ask gang bias questions to prospective jurors deprived him of an impartial jury. To resolve the issue, we have to determine whether defense counsel actually requested gang bias questions and, if not, whether the trial court should have asked them anyway.

Following a jury trial, defendant was convicted of first-degree murder under a theory of accountability and sentenced to 35 years' imprisonment. The judgment was affirmed on direct appeal. *People v. Gardner*, 282 Ill. App. 3d 209, 668 N.E.2d 125 (1996). Defendant subsequently filed a *pro se* postconviction petition alleging he was denied a fair trial when the trial judge failed to pose a question on gang bias during *voir dire*. The trial court summarily dismissed his petition as frivolous and patently without merit. This court reversed the summary dismissal and remanded the cause for second-stage postconviction proceedings. *People v. Gardner*, 331 Ill. App. 3d 358, 771 N.E.2d 26 (2002). Defendant now appeals the second-stage dismissal of his postconviction petition, contending he made a substantial showing of a constitutional violation due to the trial court's error during *voir dire*. We affirm the trial court.

FACTS

We set out the facts in our previous opinions. See *Gardner*, 282 Ill. App. 3d at 211-13; *Gardner*, 331 Ill. App. 3d at 360-62. We repeat only those facts pertinent to this appeal, but some background is required.

Defendant was convicted under a theory of accountability for the shooting death of Joseph Waites, Jr. The shooting occurred when Waites and other members of his high school football team got into a fight with several gang members, including defendant. "[G]ang activity was an integral part of [defendant's] trial." *Gardner*, 331 Ill. App. 3d at 368. At trial, the State presented evidence that defendant was a member of the Gangster Disciples street gang; the shooting occurred in Gangster Disciples' territory; and defendant made several statements telling his fellow gang members to shoot Waites ("Bust him," for example), because he thought Waites belonged to a rival gang.

At a pretrial hearing, defendant filed a written motion requesting certain questions be presented to all potential jurors during *voir dire*. The motion included the following question:

"1. Have you ever known anyone who was in a gang? (*If answer is yes, ask follow up questions.*)

a. Do you think that someone who is in a gang is necessarily a criminal?

b. Do you understand that it is not a crime just to join a gang?

c. Do you understand that one member of a gang is not legally responsible for the actions of other gang members just because they are in the same gang?

d. Would you be able to put aside any feelings you may have about gangs, and give the defendant a fair trial based on the evidence?" (Emphasis added.)

Defense counsel gave the court his written requests during the following exchange:

"THE COURT: *** Now, do you want me to ask a question of the jury—well, I'll ask if you have a question of the jury which you want asked, I will ask it. *I could ask a question something on the order of you—do you have any connection with gangs or with—if there were any evidence of gang membership would that influence your outcome or your verdict one way or the other.*

[DEFENSE COUNSEL]: We would like you to ask something. And in fact, given that we didn't know until today that we were going to be before you and didn't know how you did voir dire, we had prepared certain questions we were going to tender to the court which include questions of that character. They include other questions, as well.

THE COURT: All right. On the proposed questions, I will ask this question. 'Have you or any member of your immediate family ever had any direct involvement with a street gang[?]' I'm not going to ask questions A, B, C and D. *** I'll follow up on that question. And if they answer yes, I'll see what it is. All right. On question 2: 'Did you participate in organized sports in high school?'

[DEFENSE COUNSEL]: Your Honor, when we have an opportunity to speak to the jury, may we ask questions in those areas?

THE COURT: No. I don't think it's relevant." (Emphasis added.)

During *voir dire*, the trial court asked the entire jury pool a series of questions, including, "Have you or any member of your immediate family had any direct involvement with a street gang?" No one raised his or her hand. The court then asked, "Have you or any member of your immediate family had any indirect involvement with a street gang?" One juror raised his hand. The court later asked that juror whether his indirect involvement with gangs would prevent him from

giving both sides a fair trial. The juror answered, "no," but later was excused for cause at the State's request based on his answer to another question.

PROCEDURAL FACTS

On direct appeal, defendant alleged several trial errors, including the court's failure to ask the gang bias question (question "d" in his written motion) to all prospective jurors during *voir dire*. This court, without analysis, found the trial court's questions were sufficient to address the possibility of juror bias. *Gardner*, 282 Ill. App. 3d at 218. They were not. See *People v. Strain*, 194 Ill. 2d 467, 742 N.E.2d 315 (2000) (gang bias does not depend on one's involvement with gangs).

The Seventh Circuit, sitting *en banc*, affirmed the federal district court's denial of defendant's petition for writ of *habeas corpus*. The court held the trial court's actions did not violate defendant's rights under the federal constitution. *Gardner v. Barnett*, 199 F.3d 915, 921 (7th Cir. 1999).

One year later, the Illinois Supreme Court decided *Strain*. The court held that when gang evidence was to be an integral part of the trial, the failure to ask a gang bias question during *voir dire*, after the defendant's request, was reversible error under the Illinois Constitution. *Strain*, 194 Ill. 2d at 481.

Gardner subsequently filed a postconviction petition reasserting the *voir dire* error based on his rights under the Illinois Constitution. The petition was summarily dismissed as untimely and barred by *res judicata*. On appeal, this court vacated the dismissal and remanded for second-stage proceedings, finding *Strain* applied retroactively to defendant's case. We instructed the trial court to determine whether *Strain* provided defendant relief. *Gardner*, 331 Ill. App. 3d at 368.

On remand, the trial court heard oral argument on the State's motion to dismiss. The State contended defendant was given the *voir dire* he requested in his written motion. Defendant argued he requested and was denied permission to ask potential jurors the gang bias question. The trial court reviewed the pretrial *voir dire* requests in its order dismissing defendant's postconviction petition. The court explained the statements it made at the pretrial hearing:

"The questions as proposed by defense counsel and a misstatement by the trial court have contributed to apparent ambiguities in the record. This court has inadvertently contributed to this confusion by the following statement:

[DEFENSE COUNSEL]: Your Honor, when we have the opportunity to speak to the jury, may we ask questions in those areas?

THE COURT: No, I don't think it's relevant.
This court was of the opinion then, and still is today, that the questions labeled 'a', 'b', and 'c' were improper because they did not seek to elicit juror bias."

The trial court continued in a footnote:

"Obviously, there is no such infirmity with question 'd'. Had counsel requested that question be asked as question number '1', his request most certainly would have been allowed."

The trial court determined the venire was questioned regarding gang bias in the manner defendant requested. The trial court also concluded it had no duty to conduct a gang bias inquiry *sua sponte* and dismissed defendant's postconviction petition.

## DECISION

### I. Standard of Review

A postconviction proceeding is a collateral attack on a conviction resulting from a substantial denial of the petitioner's rights under the United States Constitution or the Illinois Constitution. *People v. Coleman*, 183 Ill. 2d 366, 378-79, 701 N.E.2d 1063 (1998). Postconviction petitions are adjudicated through a three-stage process set forth by the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 2002)).

In the first stage, the petition must state the gist of a constitutional claim or it will be summarily dismissed. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442 (2001). If the petition survives the first stage, the State is allowed to file a motion to dismiss. *Edwards*, 197 Ill. 2d at 246. At the second stage, the petitioner must make a substantial showing of a constitutional violation to survive dismissal. *Edwards*, 197 Ill. 2d at 246. Only then will the petition advance to the third stage, an evidentiary hearing. *Edwards*, 197 Ill. 2d at 246; 725 ILCS 5/122—6 (West 2002).

This case involves a second-stage dismissal. Such dismissals present only legal questions requiring plenary appellate review. *Coleman*, 183 Ill. 2d at 388.

Both parties address the issue of waiver in their briefs. We consider defendant's contentions under the plain error exception to the waiver rule, because the sufficiency of the trial court's *voir dire* examination is grounded in defendant's constitutional right to a fair trial. See *People v. Bowman*, 325 Ill. App. 3d 411, 424, 758 N.E.2d 408 (2001).

We initially remanded this matter for a determination of whether *Strain* provides defendant relief. The question now returns to us on appeal.

II. Substantial Showing of a Constitutional Violation

We start by examining defendant's *voir dire* requests and the trial court's response.

A. Defendant's written Motion

Defendant submitted a written motion requesting certain questions be asked of potential jurors during *voir dire*. The first question in the motion addressed whether potential jurors knew anyone involved in gangs. If a potential juror were to answer affirmatively, defendant requested the court to ask a series of "follow up" questions, including question "d", the gang bias question.

Defendant's written motion clearly requests the court's limited use of gang bias question "d" as "follow up" to an affirmative response to the suggested question "1." Although the court expanded the first question, it otherwise followed the organization suggested by defendant's written motion. The court asked the gang bias question only when a potential juror said he had indirect involvement with gangs in the past. Defendant's motion set forth the gang bias question as a dependent question, which precludes us from finding that he requested, in writing, the court ask the entire venire about gang bias.

B. Defense Counsel's Oral Request

Defendant contends he requested permission to ask all five of the gang-related questions to all potential jurors, regardless of their answers to the first question, when counsel asked, "When we have an opportunity to speak to the jury, may we ask questions in those areas?" This question followed the trial judge's comment:

"On the proposed questions, I will ask this question. 'Have you or any member of your immediate family ever had any direct involvement with a street gang[?]' I'm not going to ask questions A, B, C and D. *** I'll follow up on that question. And if they answer yes, I'll see what it is."

Defendant contends the trial court denied defendant any opportunity to pursue gang bias by finding the question was "not relevant."

The State contends defendant did not specifically request, orally or in writing, that the gang bias question, question "d" or something like it, be asked of all jurors. The State contends the trial court ultimately gave defendant exactly what he requested by agreeing to ask the gang bias question following an affirmative response to the gang involvement question. The State contends defendant cannot ask the court to do something and then, on appeal, contend the court committed error by doing what the defendant asked.

The record shows that, before defendant gave the court the written motion, the court asked defendant if he would like the court to ask the venire, "[I]f there were any evidence of gang membership would that influence your outcome or your verdict one way or the other?" Defendant's attorney did not directly answer the court's question and, instead, directed the trial court to his written questions. Counsel apparently rejected the question offered by the court because, in the written motion, the gang bias inquiry appeared as a "follow up" question to counsel's question on gang involvement. The trial court then rejected counsel's written requests, finding the follow-up questions, including question "d," were "not relevant."

In the postconviction dismissal order, the trial judge admitted he made a "misstatement" when he told counsel that the written follow-up questions were not relevant. The judge explained, "This court was of the opinion then, and still is today, that the questions labeled 'a', 'b', and 'c' were improper because they did not seek to elicit juror bias."

Defense counsel's oral question to the court, "[M]ay we ask questions in those areas?" is unclear. We cannot tell whether (1) he was abandoning the way questions were organized in his written motion and requesting permission to pose the gang bias question as an independent question to all potential jurors; or (2) whether counsel was seeking permission to ask "follow up" question "d" when a juror answered the first question affirmatively. Or did defense counsel want to limit *voir dire* questions regarding gang bias as a matter of trial strategy? See *People v. Furdge*, 332 Ill. App. 3d 1019, 1026, 774 N.E.2d 415 (2002) (the decision to question a potential juror on gang bias is one of trial strategy; counsel may have foregone such inquiry to avoid emphasizing the gang issue). The issue then becomes whether the court, knowing gang evidence was going to be an integral part of the State's case, gave defendant an adequate opportunity to raise gang bias during *voir dire*.

Defendant contends he requested an independent gang bias question and the trial court abused its discretion by refusing his request. Defendant relies heavily on *Strain* in support of his petition.[1]

In *Strain*, the trial court said, before conducting *voir dire*, it would ask potential jurors questions relating to " '[t]he allegation they or

---

[1] We note the federal courts found defendant was not entitled to a gang bias question during *voir dire*. However, the Seventh Circuit's *en banc* decision was based solely on the United States Constitution, while *Strain* was decided based on the Illinois Constitution. In this appeal, defendant relies solely on his state constitutional rights—*Strain* controls.

any close member of their family or close friend had any involvement with a gang, could be membership, affiliation, could be a victimization and so the parties then would be fully aware of anything like that.' " *Strain*, 194 Ill. 2d at 470. The court told the parties it would allow them to ask supplemental questions. After the first panel of the venire was questioned, defense counsel requested that the court ask every potential juror "whether the juror would find defendant less believable if the juror learned that defendant belonged to a gang." *Strain*, 194 Ill. 2d at 471. The trial court denied the request and did not allow defense counsel to pose the question.

When the case reached the Illinois Supreme Court, the court limited its analysis to the defendant's right to a fair trial under the Illinois Constitution. *Strain*, 194 Ill. 2d at 475, citing Ill. Const. 1970, art. I, § 13. Concerned with the strong prejudice many in our society hold against street gangs, especially in metropolitan areas, the supreme court held:

"[W]hen testimony regarding gang membership and gang-related activity is to be an integral part of the defendant's trial, the defendant must be afforded an opportunity to question the prospective jurors, either directly or through questions submitted to the trial court, concerning gang bias." *Strain*, 194 Ill. 2d at 477.

The supreme court rejected the State's contention that the trial court's question regarding gang involvement sufficiently explored the area of potential gang bias. The court said, "A prospective juror may have had no direct or indirect involvement with gangs, yet be biased against gang members or hold a negative opinion on the subject of gangs." *Strain*, 194 Ill. 2d at 480. The trial court in *Strain* abused its discretion when it refused the defendant's request to "probe for gang bias" during *voir dire*. *Strain*, 194 Ill. 2d at 481; see also *People v. Jimenez*, 284 Ill. App. 3d 908, 912-13, 672 N.E.2d 914 (1996) (trial court erred when it refused defendant's request to ask a gang bias question during *voir dire*).

In this case, as in *Strain*, the trial court knew, before conducting *voir dire*, the State intended to focus on defendant's gang membership. Every juror was asked whether he or she had any direct or indirect involvement with gangs; however, only one juror was asked the gang bias question. Under *Strain*, the trial court's "follow up" method, which hinged gang bias inquiry on gang involvement, did not adequately explore potential bias. But that failure to inquire does not decide this case.

*Strain* does not mandate reversal in this case because the facts are distinguishable. First, unlike defense counsel in *Strain*, defendant's attorney did not specifically request the court to ask *every* juror the

gang bias question. Second, the court followed defendant's written request and asked the gang bias question when a potential juror indicated past involvement with gangs. No objection was made to that procedure. In *Strain*, the trial court never asked anyone a gang bias question.

We find an additional distinction. Here, the trial court initially offered to pose a gang bias question. Defense counsel did not accept that specific invitation. Instead, he responded by drawing the court's attention to his written *voir dire* requests. The trial court shifted from its initial offer of an independent gang bias question to denying defendant's written request to pose a similar question. It seems neither the trial judge nor defense counsel clearly said what he meant or understood what the other was saying.

The court later explained its decision to deny defendant's requests was based on form, not relevance, and that question "d" was proper. "Misstatement" aside, when the trial court said the "follow-up" questions were "not relevant," it ended any further pursuit by the defense into the matter of gang-related bias or prejudice.

We agree with the State that defendant did not request an independent gang bias question, that he received what he asked for. We must decide whether the trial court abused its discretion when it failed to examine the entire venire on gang bias *sua sponte*.

C. Absent a Specific Request From a Defendant, Does a Trial Court Have an Obligation to *Sua Sponte* Examine All Potential Jurors Regarding Gang Bias During *Voir Dire*?

Defendant contends the trial court abused its discretion, because the questions the court asked on *voir dire* were not designed to elicit gang bias. Defendant contends the trial court knew defendant's gang affiliation would play a prominent role in the State's case and that defendant was concerned about potential juror bias against gangs. Under these circumstances, defendant contends the scope of *voir dire* was insufficient to ascertain the presence of bias. See *Strain*, 194 Ill. 2d at 480 (" 'the procedure employed to test juror impartiality *** would not have revealed prejudice against gang members since the prospective jurors were asked only whether they or any member of their families had ever had any involvement with street gangs' "), quoting *People v. Strain*, 306 Ill. App. 3d 328, 336, 714 N.E.2d 74 (1999).

The State contends no Illinois court ever has held that a trial court has a *sua sponte* duty to ask a gang bias question. See *People v. Williams*, 295 Ill. App. 3d 456, 466, 692 N.E.2d 723 (1998); *Bowman*, 325 Ill. App. 3d at 425. We have found none.

In Illinois, cases addressing the court's duty to pose *voir dire* questions can be separated into two groups. In the first group, the trial courts committed reversible error by denying the defendants' specific requests to inquire about gang bias during *voir dire*. See *e.g. Strain*, 194 Ill. 2d at 480; *Jimenez*, 284 Ill. App. 3d at 912-13.

In the second group of cases, the scope of *voir dire* was challenged as insufficient, even though the defendants did not inform the trial court of the deficiencies or request additional questioning during *voir dire*. In those cases, the reviewing courts found the trial courts had no duty to raise the additional questions *sua sponte*. See, *e.g.*, *Bowman*, 325 Ill. App. 3d at 425 (the trial court had no *sua sponte* duty to ask a prospective juror more questions, where defense counsel was offered the opportunity to pose additional questions and declined); *Williams*, 295 Ill. App. 3d at 466 (no *sua sponte* duty to raise a gang bias question during *voir dire*); *People v. Diggs*, 243 Ill. App. 3d 93, 96, 612 N.E.2d 83 (1993) (no *sua sponte* duty to question venire regarding racial bias); *People v. Porter*, 111 Ill. 2d 386, 401-02, 489 N.E.2d 1329 (1986) (absent request by the defendant, the court had no duty to pose questions during *voir dire* regarding any possible acquaintance between the prospective jurors, the parties, attorneys, witness, and the victims); see also *People v. Metcalfe*, 202 Ill. 2d 544, 782 N.E.2d 263 (2002) (a trial court has no *sua sponte* duty to excuse a juror for cause in the absence of a defendant's challenge for cause or exercise of a peremptory challenge, although the court has the discretion to do so).

In *Bowman* and *Metcalfe*, the defendants did not clearly ask for the relief they later claimed they were entitled to. These cases hold defense counsel must give the trial judge the opportunity to prevent or correct a defect in the jury selection process. *Metcalfe*, 202 Ill. 2d at 559; *Bowman*, 325 Ill. App. 3d at 425-26.

The scope of *voir dire* rests within the trial court's discretion. "An abuse of that discretion will be found 'only if, after review of the record, it is determined that the conduct of the court thwarted the selection of an impartial jury.' " *Bowman*, 325 Ill. App. 3d at 425, quoting *People v. Williams*, 164 Ill. 2d 1, 16, 645 N.E.2d 844 (1994); *Metcalfe*, 202 Ill. 2d at 559.

Just before *voir dire*, the trial judge asked defense counsel if he wanted to put the gang question, "at the bottom." Defense counsel said he would prefer the bottom, but did not ask the judge what questions he intended to ask.

The trial judge asked the entire venire a series of questions, including whether they or their family members were ever directly or indirectly involved with gangs. They were asked if anything about the

nature of the charge would prevent them from giving both sides a fair and impartial trial. The trial judge also asked them if they had any disagreement with several principles of law, including the presumption of an accused's innocence and the State's burden to prove a defendant guilty beyond a reasonable doubt.

The trial court then asked each individual venire member a series of questions, including "[Was] there any reason why [he or she] couldn't be a fair juror in this case?"

Defendant's attorney did not renew his request to ask the venire about gang bias. Nor did the defense object to the scope of the trial court's examination. He had two more clear opportunities to object to the trial court's manner of jury selection.

When the trial judge finished asking his questions, he turned to the State and defense lawyers, giving them the opportunity to ask additional questions about topics "[he had] not covered." Defense counsel said, "I have none, Your Honor."

After selecting the first 12 jurors, the trial court asked the lawyers if there was "anything else [they] want[ed] on the record." Defense counsel said, "Nothing, Your Honor."

Considering this case in light of *Strain*, we believe the trial court gave defendant ample opportunity to request a gang bias question. Defendant's inaction and failure to clarify are fatal to his position on appeal. We cannot say the trial court's conduct in this case thwarted selection of an impartial jury.

We do not hold *Strain* always is limited to instances where the defense lawyer makes a specific request for a gang bias question. There may be circumstances where, in the absence of an apparent waiver by defense counsel, the trial court must at least offer to pose a gang bias question to prospective jurors. That is, the *Strain* decision did not impose a specific request as a condition precedent for a gang bias question. It held that when testimony regarding gang membership and activity is to be an integral part of the trial, "the defendant must *be afforded an opportunity* to question the prospective jurors, either directly or through questions submitted to the trial court, concerning gang bias." (Emphasis added.) *Strain*, 194 Ill. 2d at 477. Hypertechnical or overly fastidious jury selection procedures will, in some instances, deprive an accused of a fair and impartial jury.

Defense counsel's failure to object to the trial court's manner of conducting the jury selection process does not prevent us from considering the issue under the plain error exception to the waiver rule. See *Bowman*, 325 Ill. App. 3d at 424. But it does allow us to infer counsel was making considered strategic decisions during jury selection. Whatever defense counsel had in mind, it was his obligation to

clearly state his position concerning the wording of the questions each potential juror should have been asked. Only then can we determine whether the trial court "thwarted the selection of an impartial jury." *Williams*, 164 Ill. 2d at 16. Defense counsel cannot simply call on this court to find the clarity he was unwilling to provide at trial.

CONCLUSION

We affirm the dismissal of defendant's postconviction petition for failure to make a substantial showing of a constitutional violation.

Affirmed.

CAHILL and GARCIA, JJ., concur.