# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Gacho*, 2012 IL App (1st) 091675

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT GACHO, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-09-1675 |
| Filed | April 16, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's postconviction claim of ineffective assistance of counsel arising from his counsel's failure to renew a motion to suppress his confession on the ground that it was coerced was affirmed, but the dismissal of his claims of judicial corruption and ineffective assistance of counsel based on his attorney's representation of a member of the family of a victim was reversed and the cause was remanded for further proceedings, since defendant waived the claim of ineffective assistance based on the failure to renew the motion to suppress his confession by failing to raise that argument in his direct appeal, but the claim of judicial corruption based on the trial judge's acceptance of a bribe to acquit a codefendant, taken as true, deprived defendant of his right to a fair trial and defendant made a substantial showing of an impermissible conflict that, taken as true, was strong evidence of his counsel's divided loyalty. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 83-C-127; the Hon. Diane Cannon, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and John Koltse, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Marie Q. Czech, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Justices Karnezis and Rochford concurred in the judgment and opinion.

# OPINION

¶ 1 The defendant, Robert Gacho, appeals from the circuit court's second-stage dismissal of his petition, filed pursuant to the Post-Conviction Hearing Act (Act) (Ill. Rev. Stat. 1991, ch. 38, ¶ 122-1). On appeal, the defendant argues that his petition should not have been dismissed, because it made a substantial showing that (1) he was denied a fair trial due to his trial judge's corruption; (2) he received ineffective assistance of counsel because his attorney failed to renew a motion to suppress his confession after witnesses testified that the confession had been physically coerced; and (3) he received ineffective assistance of counsel because his attorney, who also represented a family member of one of the victims, labored under a conflict of interest. For the reasons that follow, we reverse the circuit court's dismissal of the defendant's corruption claim and conflict-of-interest claim and remand for further proceedings on those issues. We affirm the circuit court's dismissal of the defendant's claim of ineffective assistance of counsel.

¶ 2 After a jury trial, the defendant was convicted of murder, armed robbery, and aggravated kidnaping for his part in the killing of two men, Tullio Infelise and Aldo Fratto. The defendant was sentenced to death, and he appealed his conviction and sentence directly to the supreme court. See Ill. Const. 1970, art. VI, § 4(b); Ill. S. Ct. R. 603 (eff. July 1, 1971). The supreme court affirmed the defendant's convictions but vacated his death sentence and ordered that he be resentenced. *People v. Gacho*, 122 Ill. 2d 221, 522 N.E.2d 1146 (1988). On remand, the defendant was sentenced to imprisonment for life.

¶ 3 The evidence at the defendant's trial was detailed in the supreme court's decision on his direct appeal. For that reason, we recount that evidence only briefly here, along with additional details to provide context for the defendant's postconviction claims.

¶ 4 Prior to the defendant's trial, one of the prosecuting attorneys pointed out on the record that the defendant's counsel had, in the past, represented a family member of Tullio Infelise. The following exchange then occurred between the defendant and the trial judge, Thomas Maloney (Maloney):

"THE COURT: Mr. Gacho, are you aware of all these circumstances that are being referred to and discussed now?

DEFENDANT GACHO: Yes, sir.

THE COURT: And you have discussed it in detail with your attorney?

DEFENDANT GACHO: Yes.

THE COURT: And you have no objection to whatever has occurred in the past regarding [your attorney's] representation of a family member of one of the victims here?

DEFENDANT GACHO: No, I don't.

THE COURT: And you wish him to continue as your lawyer, is that correct?

DEFENDANT GACHO: Yes."

¶ 5    Also prior to the defendant's trial, the defendant moved to suppress his written confession, on the ground that police had physically and psychologically coerced it. At the hearing, the defendant's wife testified that she went to the police station while they were interrogating the defendant. While she was there, she said, police questioned her aggressively. She said that she began crying, and, as she cried, police walked the defendant by her room so that she and he could see one another. The defendant testified that police slapped him and struck him in his injured kidney as they questioned him. He also said that police told him they would charge his wife with the crimes, and have his children taken away from her, if he did not confess. The defendant recalled seeing his wife crying as police questioned her. He said that he signed a confession to stop the physical abuse and because he wanted his wife to be set free. The defendant was impeached on cross-examination by the facts that he did not raise these allegations to people who interviewed him and gave him medical treatment after his confession, and the State adduced testimony from police officers saying that they did not abuse the defendant. At the conclusion of the hearing, Maloney denied the defendant's motion. The case proceeded to a trial at which the defendant was tried before a jury, while a codefendant, Dino Titone, was tried simultaneously before Maloney.

¶ 6    At the defendant's trial, the State's theory of the case was supported by, among other things, the defendant's confession; information given to police by Infelise before he died; and the testimony of the defendant's girlfriend, Katherine De Wulf. The State's evidence produced the following narrative. On the night of December 11 and morning of December 12, 1982, the defendant, Joseph Sorrentino and Titone met the victims at the defendant's home to consummate a drug deal. During the encounter, the defendant and Titone forced Infelise and Fratto at gunpoint to be bound, then guided them to a waiting car. Sorrentino and Titone rode in a car with the bound victims, while the defendant and De Wulf followed them in De Wulf's car. During the drive, the defendant explained to De Wulf that the group planned to "waste" the victims. After driving for less than an hour, the cars stopped, and the defendant told De Wulf that he and she were waiting to hear gunshots. She then heard several gunshots before Titone and Sorrentino came to her car and reported that they had fatally shot the two victims. The defendant, Titone, and Sorrentino subsequently divided money and drugs they obtained from the victims.

¶ 7    As he had at the hearing on his motion to suppress, the defendant testified at trial that

police coerced his inculpatory statement by physical violence. He also presented testimony from his mother-in-law, Edna Haynes. Edna Haynes testified that she and two of her children, Timothy and Stephanie Haynes, went to the defendant's apartment in December 1982 and saw police there. According to Edna Haynes, one police officer admitted to her that police had "scared [the defendant] and slapped him around a little bit so he would talk," while another police officer suggested that police had "sock[ed] him good." Stephanie and Timothy Haynes gave similar testimony.

¶ 8    Following the trial, the jury returned a guilty verdict against the defendant, and he was subsequently sentenced to death. He was resentenced to imprisonment for life after the supreme court vacated his sentence on direct appeal.

¶ 9    In February 1991, the defendant filed his first *pro se* postconviction petition, which led eventually to this appeal. In that 46-page document, the defendant asserted, among other things, that Maloney's corruption had deprived him of a fair trial and that his counsel labored under a conflict of interest. Regarding the conflict-of-interest allegation, the defendant stated in his petition that his attorney represented "a member of the Infelise family," Ross Infelise, at the same time counsel represented the defendant. The defendant further stated that counsel told the defendant that " 'he discussed aspects of his representation of [the defendant] with the Infelise family' " but that counsel did not tell the defendant the precise substance of those conversations. The defendant added that, "[a]fter being convicted, [counsel] informed [the defendant] that, 'he was still handling some legal matter for Ross Infelise,' " but the defendant stated in his affidavit that counsel never apprised him of the nature of the legal matter. In his petition, the defendant also asserted that his counsel provided ineffective assistance by failing to move to re-open the motion to suppress after seeing a police report that the defendant believed undercut evidence that Tullio Infelise inculpated him. For his ineffective assistance of counsel claims, the defendant added that his appellate counsel was ineffective for failing to raise the claims on direct appeal.

¶ 10    Postconviction counsel was eventually appointed for the defendant, and counsel filed an amended postconviction petition in November 1997. The amended petition stated that it "replace[d]" all of the claims in the defendant's initial petition. It reiterated the above three claims, except that it did not include a claim that the defendant's appellate counsel had been ineffective.

¶ 11    In December 1998, after many continuances, the circuit court held a hearing on the State's motion to dismiss the defendant's amended petition. At the beginning of that hearing, the defendant's counsel agreed when Judge Robert Bertucci, who was then presiding over the case, stated that it was his "understanding that there [was] an amended post-conviction petition that was filed [in November 1997], and that [was] the only petition that the Court need[ed] to address." Although it contested the defendant's ineffective assistance of counsel claims, the State in its argument conceded that the defendant's judicial corruption claims should be resolved at an evidentiary hearing. Judge Bertucci agreed that an evidentiary hearing should be held to resolve the defendant's charges of judicial corruption, and he indicated that the parties should conduct discovery on both the corruption claim and the claim that the defendant's trial counsel labored under a conflict of interest. Judge Bertucci then set the matter for a further status hearing.

¶ 12    In April 1999, the defendant's postconviction counsel withdrew his representation due to a conflict of interest, and new counsel was appointed for the defendant. On April 9, 2001, after several status hearings, the defendant's new counsel appeared before Judge Diane G. Cannon. On that date, counsel informed the court that the defendant's case was not set for an evidentiary hearing and that she was undertaking an investigation. The prosecutor, who had litigated the case before Judge Bertucci, did not interject.

¶ 13    On July 30, 2008, the defendant's new postconviction counsel filed a supplemental petition for postconviction relief. In open court, counsel explained that the petition was intended to supplement the defendant's original *pro se* petition, not previous counsel's amended petition. The supplemental petition noted that Maloney had been convicted of accepting bribes in exchange for promises to "fix" trials. It further alleged that Dino Titone, the codefendant whose bench trial was held simultaneously with the defendant's jury trial, had tendered a bribe to Maloney via Titone's attorney. This claim was supported by an affidavit from Titone's father, who described a scheme in which the attorney would give the money to a "bagman" named "McGee," who would then pass the money to Maloney. Titone's father further attested that the attorney told them "that as long as Maloney got two out of three" of the three codefendants, "it would be enough"; that is, "as long as [the defendant and Sorrentino] were found guilty, [Maloney] could get away with letting [Titone] go free." Although Maloney ultimately found Titone guilty and sentenced him to death, Titone's father speculated in his affidavit that Maloney reneged on their deal out of fear that the scheme would be uncovered. The defendant's petition observed that Titone had been granted a new trial based on this information.

¶ 14    The supplemental petition asserted that the defendant's pretrial counsel approached him with the idea of bribing Maloney but that the defendant was unable to gather the necessary funds. To support this claim, the defendant attached his own affidavit, as well as an affidavit from a relative who recalled that the defendant asked her for funds to fix his case. The petition made no mention of the defendant's *pro se* claim of trial counsel's conflict of interest.

¶ 15    On May 29, 2009, in a written order, Judge Cannon dismissed the defendant's postconviction claims. On the corruption claims, Judge Cannon reasoned that the defendant was convicted by a jury, not Maloney, and she noted that the defendant cited no suspect rulings Maloney might have made in his case. Regarding the conflict-of-interest issue, Judge Cannon found that the record, which includes a transcript of the defendant's waiving any conflict issues, belied the defendant's conflict claim. The defendant now appeals to argue that the circuit court erred in dismissing his postconviction petition.

¶ 16    The Act provides a means by which a defendant may challenge his conviction for "substantial deprivation of federal or state constitutional rights." *People v. Tenner*, 175 Ill. 2d 372, 378, 677 N.E.2d 859 (1997). Except in cases where the death penalty has been imposed, proceedings under the Act are divided into three distinct stages. *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102 (1996). At the first stage, the trial court must examine the petition independently and summarily dismiss it if it is frivolous or patently without merit. Ill. Rev. Stat. 1991, ch. 38, ¶ 122-2.1; *Gaultney*, 174 Ill. 2d at 418. If not summarily dismissed, the petition proceeds to the second stage, at which an indigent defendant is

entitled to appointed counsel, the petition may be amended, and the State may answer or move to dismiss the petition. Ill. Rev. Stat. 1991, ch. 38, ¶¶ 122-4, 122-5; *Gaultney*, 174 Ill. 2d at 418. At the second stage, the petition may be dismissed "when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Hall*, 217 Ill. 2d 324, 334, 841 N.E.2d 913 (2005). A postconviction petitioner is not entitled to an evidentiary hearing as a matter of right; rather, to warrant an evidentiary hearing, the allegations in the petition must be supported by the record or by accompanying affidavits. *People v. Coleman*, 183 Ill. 2d 366, 381, 701 N.E.2d 1063 (1998). Nonspecific and nonfactual assertions that merely amount to conclusions are not sufficient to warrant a hearing under the Act. *Coleman*, 183 Ill. 2d at 381. "In determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are taken as true." *People v. Towns*, 182 Ill. 2d 491, 503, 696 N.E.2d 1128 (1998). A petition that is not dismissed at the first or second stage advances to the third stage, at which an evidentiary hearing is held. See Ill. Rev. Stat. 1991, ch. 38, ¶ 122-6; *Gaultney*, 174 Ill. 2d at 418. Dismissal of a petition at the second stage, as occurred here, is reviewed *de novo*. *People v. Whitfield*, 217 Ill. 2d 177, 182, 840 N.E.2d 658 (2005).

¶ 17 The defendant's first argument on appeal is that his postconviction claims of judicial bias merited a third-stage evidentiary hearing. Maloney's pattern of judicial corruption is well-documented (see, *e.g.*, *Bracy v. Gramley*, 520 U.S. 899 (1997); *United States v. Maloney*, 71 F.3d 645 (7th Cir. 1995)), and it need not be belabored here, except to say that the defendant is correct that Maloney has been shown to have accepted bribes to fix murder cases. The defendant argues that this corruption deprived him of his right to a fair trial.

¶ 18 "A fair trial in a fair tribunal is a basic requirement of due process." *People v. Hawkins*, 181 Ill. 2d 41, 50, 690 N.E.2d 999 (1998) (citing *Bracy*, 520 U.S. 899). "Fairness at trial requires not only the absence of actual bias but also the absence of the probability of bias." *Hawkins*, 181 Ill. 2d at 50 (citing *In re Murchison*, 349 U.S. 133, 136 (1955)). "To this end, no person is permitted to judge cases in which he or she has an interest in the outcome." *Hawkins*, 181 Ill. 2d at 50. " 'Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused denies the latter due process of law.' " *Hawkins*, 181 Ill. 2d at 51 (quoting *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

¶ 19 "[A] [defendant] who alleges that his trial judge's corruption violated his right to a fair trial must establish (1) a 'nexus' between the judge's corruption or criminal conduct in other cases and the judge's conduct at [the defendant's] trial; and (2) actual bias resulting from the judge's extrajudicial conduct." *People v. Fair*, 193 Ill. 2d 256, 261, 738 N.E.2d 500 (2000) (citing *People v. Titone*, 151 Ill. 2d 19, 30-31, 600 N.E.2d 1160 (1992)). Here, the defendant's allegations and supporting documents, taken as true, emphatically establish both prongs of the above test.

¶ 20 On the first prong, the State concedes that Maloney was corrupt, and it further concedes that Maloney's corruption tainted the trial of Dino Titone, a codefendant in this case. The State argues, however, that there is no "nexus" between Maloney's corruption and the defendant's own case. We disagree. Indeed, it is difficult to conceive how Maloney's

misconduct in Titone's trial did not also infect the defendant's trial. The trials were held simultaneously, concerned the same set of murders, and were both presided over by a man the State concedes had an interest in the proceedings. Further, notwithstanding the fact that the defendant's trial was simultaneous with the unfair trial given to Titone, the defendant raised specific allegations tying Maloney's interest in Titone's case to a bias in the defendant's case. As the defendant points out in his briefs, he has alleged that Maloney accepted a bribe in Titone's case with the idea that he could conceal his perfidy by ensuring that Titone's codefendants, including the defendant here, be found guilty. The defendant even supplied evidentiary support for this allegation, in the form of an affidavit from Titone's father, who detailed Maloney's scheme in Titone's case. The nexus between Maloney's corruption and this case is very strong, and the defendant has satisfied the first prong of the test for advancing a claim of judicial corruption.

¶ 21    To satisfy the second prong of the above test, a defendant "need not prove actual bias if he can prove that the trial judge had a personal interest in the outcome of the trial." *Fair*, 193 Ill. 2d at 263. We conclude that the defendant's allegations, taken as true, satisfy this second prong for the same reasons they satisfy the first prong: they demonstrate Maloney's interest in ensuring that the defendant be found guilty.

¶ 22    The State argues that the defendant's corruption claim must fail because he cites no particular instances of suspect rulings at his trial, and because his guilt was determined by a jury, not by Maloney. Accordingly, the State argues, "it is completely unclear how Maloney could have engineered an unfair conviction." The State's argument misses the point. As we noted at the outset, a fair trial is a basic component of due process. Regardless of whether Maloney could have been effective in any attempts to steer the defendant's verdict, the fact that he had an interest in doing so means that the defendant did not receive a trial before an impartial tribunal. The defendant's allegations, taken as true, establish that he was deprived of this basic right at his trial, and he is entitled to a forum to vindicate this right. For that reason, we agree with the defendant that the circuit court erred in dismissing his postconviction claims regarding Maloney's judicial corruption.

¶ 23    The defendant's second argument on appeal is that his trial counsel provided him ineffective assistance. See U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668 (1984). He argues that counsel should have moved to re-open his motion to suppress after three trial witnesses testified that police admitted having physically coerced the defendant's confession.

¶ 24    In response, the State argues that the defendant has waived or forfeited this argument, because it could have been raised on direct appeal. As the State points out, "[p]ostconviction claims are limited to those claims that were not and could not have been previously adjudicated on direct appeal." *People v. Sanders*, 238 Ill. 2d 391, 398, 939 N.E.2d 352 (2010). "Claims that were raised and decided on direct appeal are barred by *res judicata* and those claims that could have been raised, but were not, are considered waived." *Sanders*, 238 Ill. 2d at 398. The State further observes that the basis for the defendant's argument that counsel should have re-opened the motion to suppress, that is, the testimony from the three trial witnesses, was included in the original record on appeal just as it is included in the current record. Thus, the State argues, the defendant could have raised this argument on

direct appeal and should be barred from doing so now.

¶ 25    In reply to the State's waiver argument, the defendant notably does not assert that appellate counsel was ineffective for failing to raise this issue. Instead, the defendant argues that his claim is, in fact, based on matters outside the record, because he now alleges that one of the witnesses "informed [his] trial counsel a week before she testified at trial that [police] admitted" their physical coercion. The defendant argues that "the fact that trial counsel knew" of this testimony prior to trial "is new evidence not on the record." However, we do not see, nor does the defendant explain, why this "new" evidence was required to present his ineffectiveness claim. The basis of his current ineffectiveness claim is that the trial testimony of the three witnesses should have prompted counsel to ask to re-open the motion to suppress. The substance of that testimony is readily apparent from the record as it existed on direct appeal. Further, it must be inferred from the contents of the three witnesses' testimony, and the questions trial counsel asked to adduce that testimony, that counsel knew the witnesses would describe police admissions of abuse. Accordingly, we agree with the State that defendant could have raised this ineffective assistance claim in his direct appeal, and he is barred from doing so now.

¶ 26    The defendant's final argument on appeal is that the circuit court erred in dismissing his claim that trial counsel improperly labored under a conflict of interest. As noted above, the defendant asserted in his *pro se* postconviction petition that his trial counsel concurrently represented a family member of one of the victims and "discussed aspects of his representation" of the defendant with the family.

¶ 27    "Persons accused of crime enjoy a sixth amendment right to the effective assistance of counsel." *People v. Spreitzer*, 123 Ill. 2d 1, 13, 525 N.E.2d 30 (1988). "Effective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations." *Spreitzer*, 123 Ill. 2d at 13-14. Illinois recognizes two classes of impermissible attorney conflicts of interest. See *People v. Spreitzer*, 123 Ill. 2d 1.

¶ 28    The first category of conflict, termed "*per se* conflicts," consist of those "certain facts *** [that] engender, *by themselves*, a disabling conflict" (emphasis in original), usually "the defense attorney's prior or contemporaneous association with either the prosecution or the victim." *Spreitzer*, 123 Ill. 2d at 14. "The justification for treating these conflicts as *per se* has been that the defense counsel in each case had a tie to a person or entity *** which would benefit from an unfavorable verdict for the defendant." *Spreitzer*, 123 Ill. 2d at 16. In such cases, the defendant need not show prejudice in order to secure a reversal of his conviction. *Spreitzer*, 123 Ill. 2d at 15.

¶ 29    The second category of conflict, often called a "potential," "possible," or "actual" conflict, describes something short of a *per se* conflict. See *Spreitzer*, 123 Ill. 2d at 17-18. In such cases, a defendant's convictions may be reversed if the trial court was informed of the problem and failed to take adequate protective steps, or where the court was not apprised and the defendant can show that " 'an actual conflict of interest adversely affected' counsel's performance." *Spreitzer*, 123 Ill. 2d at 18 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

¶ 30    Here, the defendant alleges alternatively that both forms of conflict were present here.

First, he argues that counsel labored under a *per se* conflict, because his representation of a family member of one of the victims divided his loyalty and gave him incentive to disregard the defendant's interests. The State does not repeat the circuit court's reasoning that the defendant waived this conflict in open court, and we would reject such a contention in any event. As the defendant observes in his brief, his waiver in open court pertained to counsel's past representation of a member of the Infelise family, but his postconviction claim is based on counsel's continued representation of Ross Infelise. In lieu of this waiver argument, the State raises two points.

¶ 31    First, the State responds by noting that the defendant failed to indicate the nature of trial counsel's representation of Ross Infelise, and the State argues that the defendant was required at least to explain why he was unable to provide this information in his petition. However, in our reading, the defendant did explain why this information was missing from his petition. The defendant stated plainly in his petition that counsel did not inform him of the nature of the representation of the victim's family.

¶ 32    Second, the State offers that we cannot determine the level of counsel's conflict without a more specific description of the nature of Ross Infelise's familial relationship to the victim. While we agree that the nature of the relationship might bear on the intensity of counsel's conflict, we conclude that the defendant has pled sufficient facts to support his claim of a conflict. Even without knowing Ross Infelise's relationship to the victim, we know that counsel owed a duty of loyalty to the Infelise family. Presumably, counsel was motivated to maintain the family's favor, and the defendant's acquittal was unlikely to advance that aim. Further, notwithstanding that point, the defendant directly alleged that counsel admitted having discussed his case with the Infelise family. This allegation, taken as true, is strong evidence of counsel's divided loyalty. In total, then, the defendant's postconviction allegations regarding his counsel make a substantial showing of a constitutional violation, and they warrant an evidentiary hearing. Because the evidence adduced at any such hearing may affect the strength of the defendant's allegations in unforeseeable ways, we do not now resolve the questions of whether counsel suffered from a *per se* conflict, or what effect an actual conflict might have had on the defendant's trial. We hold only that the defendant's allegations make a substantial showing of an impermissible conflict whose contours may be defined in further proceedings.

¶ 33    For the foregoing reasons, we affirm the circuit court's dismissal of the defendant's claim that he received ineffective assistance of counsel due to counsel's failure to re-open his motion to suppress. However, we reverse the trial court's dismissal of his judicial corruption claim and his claim that trial counsel labored under a conflict of interest. We remand this matter to the circuit court for an evidentiary hearing on these two claims, to determine if either or both entitle the defendant to a new trial.

¶ 34    Affirmed in part and reversed in part; cause remanded.